CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
MAY 31 2007
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM MATHIAS, <br> Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:07cv00031 |
| v. | ) <br> ) | MEMORANDUM OPINION |
| DONNIE SIMPKINS, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Plaintiff William Mathias ("Mathias"), a Virginia inmate proceeding pro se, brings this civil rights Complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Mathias is currently housed at the New River Valley Regional Jail ("NRVRJ") and alleges that the jail is overcrowded, thereby exposing him to unsanitary and unsafe living conditions. Mathias seeks monetary damages and injunctive relief. Upon review of the record, I conclude that Mathias has not stated a claim upon which relief can be granted and, therefore, dismiss the Complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).[1]

## I.

Mathias first alleges that the conditions at the NRVRJ are unsanitary and dangerous. According to Mathias, there are over 600 inmates housed at the NRVRJ, which has bed space for only 371 inmates. He claims that because of the excess of inmates, many inmates are required to sleep on a "cold floor," sometimes next to a toilet, and eat on the floor with "dust and dirt contaminating [the] food." (Pl.'s Am. Compl. 2, 4). He surmises that there are over 85 inmates in his section and that they are required to share three toilets, three showers, and one sink. He alleges

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

1

that these conditions create an unsanitary living environment in violation of the Eight Amendment of the Constitution. Mathias further alleges that he is disabled and suffers from several respiratory diseases, including emphysema and asthma, and that he is more susceptible to diseases that flourish in crowded conditions. In his view, the overcrowded conditions of which he complains, combined with a lack of fresh air, have caused a sinus infection and have made it difficult for him to breath.

Additionally, Mathias claims that the crowded conditions create "unnecessary aggravated tension among inmates resulting in physical altercations and riots." (Pl.'s Am. Compl. 3). Mathias specifically points to a December 28, 2006 altercation, during which he was attacked by several other inmates for allegedly defecating in the showers. Mathias claims that this caused him great mental distress and that he injured his hand during the attack. Mathias also alleges that he was placed in confinement as punishment for the altercation and that this created "an unreasonable risk and serious damage to [his] well-being." (Pl.'s Am. Compl. 3).

Mathias finally alleges that he "lives in fear for his life" because inmates' cell doors are not secured at night and the inmates are free to roam their respective cell blocks. (Pl.'s Am. Compl. 4). He claims that this is unconstitutional as it creates an unreasonable risk to security and to the physical well-being of inmates and officers.

## II.

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 49-50 (1988). Because Mathias is a pretrial detainee and not a convicted

2

prisoner,[2] his claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which operates only after the state has secured a conviction. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). Therefore, the constitutional protection at issue in this case is the right, guaranteed by the Fourteenth Amendment, not to be punished before an adjudication of guilt in accordance with due process of law. Bell v. Wolfish, 441 U.S. 520, 535-36 (1979)[3]; Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993); Nelson v. Collins, 659 F.2d 420, 425 (4th Cir. 1981) (en banc). Thus, it must be determined whether the conditions and treatment received by Mathias amounted to punishment. Absent a showing of expressed intent on the part of correction officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538.

Even though Mathias's claims are governed by the Due Process Clause of the Fourteenth Amendment, Eighth Amendment holdings respecting punishment of convicted inmates are, to some extent, applicable to define the protections afforded by the Fourteenth Amendment to pretrial detainees. See Whisenant v. Yuam, 739 F.2d 160, 163 n. 4 (4th Cir. 1984); Westmoreland v. Brown,

---

[2] The Supreme Court has provided some guidance on this issue by defining pretrial detainees as those "persons who have been charged with a crime but who have not yet been tried on the charge." Bell v. Wolfish, 441 U.S. 520, 523 (1979). Mathias alleges in a letter received by the court on April 23, 2007, that he has "not been convicted of any charges yet." Therefore, Mathias will be considered a pretrial detainee for the purposes of this opinion.

[3] In Bell, the correctional facility was a federal one and hence the Due Process Clause of the Fifth Amendment was at issue. Where, as here, the infringement is alleged to have occurred at the hands of a state, the Due Process Clause of the Fourteenth Amendment is the relevant constitutional provision. Westmoreland v. Brown, 883 F. Supp. 67, 73 (E.D. Va. 1995) (citing City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244 (1983) and Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987)).

3

883 F. Supp. 67, 73 (E.D. Va. 1995). Because both the Fourteenth Amendment's Due Process clause and the Eighth Amendment address the permissibility of punishment, decisions speaking to the dimensions of the Eighth Amendment's prohibition of cruel and unusual punishment provide guidance in two respects. First, the due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244 (1983); see also Turner v. Kight, 121 Fed. Appx. 9, 13 (4th Cir. 2005) (holding that a pretrial detainee's due process rights are "co-extensive" with a convicted prisoner's rights under the Eighth Amendment (citing Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992))); Loe v. Armistead, 582 F.2d 1291, 1294 (4th Cir. 1978). Second, Eighth Amendment jurisprudence has addressed the contours of the term "punishment" which lies at the core of the protection of inmates afforded by both the Eighth and Fourteenth Amendments. Westmoreland, 883 F. Supp. at 72. Therefore, I will consider relevant Eight Amendment decisions in the context of Mathias's claims.

### A. Unsanitary Jail Conditions

Mathias's claim that the NRVRJ conditions are unsanitary because of overcrowding does not rise to the level of a constitutional violation. While the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). It is clear that double or triple celling of inmates is not per se unconstitutional. See, e.g., Rhodes, 452 U.S. at 348 (finding double-celling not per se unconstitutional); Hite v. Leeke, 564 F.2d 670, 673-74 (finding temporary triple-celling not per se unconstitutional); Crowe v. Leeke, 540 F.2d 740 (4th Cir. 1976) (finding that inmate being forced to sleep in an overcrowded cell was

4

not a condition of confinement which shocks the conscience so as to fall within the constitutional prohibition against cruel and unusual punishment). But, overcrowding accompanied by unsanitary and dangerous conditions can constitute an Eighth Amendment violation, provided an identifiable human need is being deprived. See Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991) (citing Wilson v. Seiter, 501 U.S. 194, 304); Johnson v. Levine, 588 F.2d 1378 (4th Cir. 1978).

The appropriate framework for addressing what constitutes punishment under the Eighth Amendment is set out in Farmer v. Brennan, 511 U.S. 825, 837 (1994), where the Supreme Court, in defining the "deliberate indifference" standard, held that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

See also Short v. Smoot, 436 F.3d 422 (4th Cir. 2006). Farmer thus teaches that punishment, whether for a convicted inmate or a pretrial detainee, is the product of intentional action, or intentional inaction, respecting known and substantial risks of harm. Westmoreland, 883 F. Supp. at 72. Furthermore, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993); Westmoreland, 883 F. Supp. at 76 (finding that to successfully assert a claim of punishment without due process under the Fourteenth Amendment, an inmate must assert not only that the defendants

were deliberately indifferent to the substantial risk of harm posed by overcrowding, but also that this deliberate indifference caused a physical or emotional injury). A de minimis injury does not violate the Fourteenth Amendment. See Ingraham v. Wright, 430 U.S. 651, 674 1977) (holding that there is a de minimis level of imposition with which the Constitution is not concerned); Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997).

I find that Mathias has not alleged a sufficiently "substantial" risk of harm to his health or safety to state a claim within the meaning of the Fourteenth Amendment. Further, Mathias fails to show that his living conditions caused him anything more than de minimis injuries or that the allegedly unsanitary conditions pose an unreasonable risk of serious damage to his future health. Although crowded conditions and the sharing of amenities may be uncomfortable, Mathias has not demonstrated that, because of those conditions, he sustained a serious or significant injury; rather, he complains merely that this exposure caused him transient discomfort. At most he alleges a sinus infection and difficulty breathing, neither of which are serious or significant physical injuries that afford relief under the Constitution. Accordingly, I find that Mathias fails to state a claim of constitutional import and that his claim concerning unsanitary conditions must be dismissed.

**B. Jail Assault**

Mathias's claim that he deserves § 1983 relief because he was attacked by several other inmates also fails. Not every assault suffered by an inmate rises to the level of a constitutional violation. Blankenship v. Virginia, 432 F. Supp. 2d 607 (E.D. Va. 2006). Any time an individual is incarcerated, "there is some risk that he may be a victim of violence at the hands of fellow inmates, whether he is convicted or awaiting trial." Westmoreland, 883 F. Supp. at 74. It is "not possible to eliminate the risk of assault in jails for pretrial detainees or convicted felons, any more

6

Case 7:07-cv-00031-JLK-mfu Document 16 Filed 05/31/07 Page 6 of 10 Pageid#: 56

than it is to eliminate that risk in society at large." Id. Of course, it is constitutionally permissible to detain persons in jail before trial. See United States v. Salerno, 481 U.S. 739 (1987). Hence, it is not unconstitutional per se to subject a pretrial detainee to the risk of harm inherent in any incarceration. The issue of constitutional import presented in this action is when the risk of harm becomes so substantial that "deliberate indifference" to it, within the meaning of Farmer v. Brennan, is the legal equivalent of inflicting "punishment." Westmoreland, 883 F. Supp. at 74; see also Wilson v. Seiter, 501 U.S. 294 (1991); Strickler v. Waters, 989 F.2d, 1375, 1381 (4th Cir. 1993).

The decisions finding that prison assaults constitute unconstitutional "punishment" have most often done so upon finding one of three species of particularized harm. Westmoreland, 883 F. Supp. at 74.

> In the first, the plaintiff has been at some particularized risk individually because of: (i) a personal trait; or (ii) membership in an identifiable class that is particularly vulnerable to harm. See Farmer v. Brennan, 511 U.S. 825 (1994) (placement of frail transsexual in a particular facility may deprive him of Eighth Amendment rights if defendants deliberately disregarded his particular vulnerability to sexual assault). In the second, the person who committed the assault has demonstrated an unusually violent nature of which the defendant knows and which makes the assailant a substantial risk to his fellow inmates. See Morgan v. District of Columbia, 824 F.2d 1049 (D.C. Cir. 1987) (official liability exists where assailant who had been convicted of first degree murder, had assaulted fellow inmates in the past, had plotted to kill a fellow inmate, and had undergone psychiatric treatment was not segregated into a higher security facility). In the third, the defendants were aware that the specific assault was ongoing or had occurred, yet had failed to respond to protect, or to treat, the victim. See Swofford v. Mandrell, 969 F.2d 547 (7th Cir. 1992) (motion to dismiss Section 1983 claim denied where plaintiff was beaten, kicked, urinated on, and sodomized with a broom handle, and where sheriff and deputies neither answered his repeated screams for help nor inspected his cell for eight hours after the assault).

Id.

Although it is in situations such as those described above that courts most often have

7

Case 7:07-cv-00031-JLK-mfu   Document 16   Filed 05/31/07   Page 7 of 10   Pageid#: 57

determined that prison violence gives rise to a constitutional deprivation, Farmer makes clear that an inmate need not allege a risk of harm particular to him at the hands of a known assailant. Westmoreland, 883 F. Supp. at 74. In that regard, the Farmer Court held:

> Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health,' [citation omitted], and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

511 U.S. at 843. Taken together, these decisions circumscribe a spectrum within which a prison assault might constitute unconstitutional "punishment." Westmoreland, 883 F. Supp. at 74. At the most obvious end of the spectrum is the known risk to the particular plaintiff at the hands of a particular assailant. Id. At the other end is knowledge of a risk so pervasive that it affects all inmates. Id. Mathias's complaint does not assert that the defendant knew of a particular risk of harm to him individually. Consequently, the decisions involving allegations of particularized risk are of no help to him. Instead, Mathias argues that historic and pervasive overcrowding in the NRVRJ resulted in a risk of grave physical harm or injury that, in turn, resulted in the December assault. In so doing, Mathias alleges a generalized risk to which every inmate incarcerated at the NRVRJ is subjected.

I find that the risk of harm alleged by Mathias does not rise to the level of a substantial risk of harm that constitutes the predicate for punishment within the meaning of the Fourteenth Amendment. Mere allegations of crowded conditions, without more, are insufficient to state a claim

8

in this context. Thus, neither the NRVRJ Superintendent or the other defendants are liable under a theory of "deliberate indifference." See Westmoreland, 883 F. Supp. at 75-76 (finding that high risk of assault in city jail did not rise to level of substantial risk the knowledge of which constitutes deliberate indifference by city officials and thus risk was not "punishment" in constitutional sense). Furthermore, I find that Defendants acted reasonably under the circumstances, even though the harm was not averted.[4] See Farmer, 511 U.S. at 844 (defendant would still be free from liability if he "responded reasonably to the risk, even if the harm was not averted"). There was no indication or warning that Mathias was at risk for an attack prior to the December assault, thus I find that the prison officials were not unreasonable for placing Mathias in the cell block where the assault occurred. Furthermore, Mathias's own submissions in the instant case demonstrate that medical treatment was provided to Mathias immediately after his assault, and that he was separated from the general population of inmates for an extended period of time after the assault occurred, presumably for his protection. Accordingly, this claim must be dismissed.

## C. Unsecured Cell Doors

Mathias's claim that allegedly unsecured cell doors expose himself, other inmates, and officers to a constitutionally unacceptable risk of physical violence also fails as Mathias does not allege sufficient facts to support his claim of a substantial risk of harm.[5] First, he fails to claim that he is even located in the cell blocks where the inmates allegedly roam free. In that same vein, he

---

[4] This is presuming that Mathias even makes a sufficient showing that he was indeed harmed. Mathias states only that an x-ray was taken of his hand after the altercation but does not indicate the result or the extent of his alleged injuries.

[5] In the Order of February 1, 2007, conditionally filing the instant Complaint, this court gave Mathias an opportunity to amend his claim and warned Mathias that his claim would be dismissed if he did not allege specific details and facts supporting all of his claims.

does not say how he knows the cells can be opened or that potentially dangerous inmates can gain access to him through his locked cell door. He does not allege that he or anyone else has been threatened or that the inmates who previously assaulted him are in his cell block. He does not allege that he needs or has requested protection. Further, while he claims that the inmates move about freely without detection by the guards, he fails to reconcile this with his statement that there are cameras in all of the cell blocks. Finally, Mathias does not allege that any type of violence has been committed against him or any other inmate because of the allegedly unsecured doors, or that guards would not be aware and readily available to prevent any trouble from arising even if some inmates were able to manipulate their cell doors. Therefore, this claim must also be dismissed.

### III.

Based on the foregoing, I find that Mathias has not presented any claims that constitute a violation of his constitutional rights. Therefore, I dismiss his Complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to Plaintiff and to counsel of record for the Defendants, if known.

ENTER: This 31st day of May, 2007

Senior United States District Judge